0UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEANNA RAYBURN,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

Case No. 2:17-CV-14084
District Judge Nancy G. Edmunds
Magistrate Judge Anthony P. Patti

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 10) AND GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 12)**

**I.   RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 10), **GRANT** Defendant's motion for summary judgment (DE 12), and **AFFIRM** the Commissioner's decision.

**II.   REPORT**

Plaintiff, Deanna Rayburn, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security supplemental security income (SSI) benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary

judgment (DE 10), the Commissioner's cross motion for summary judgment (DE 12), Plaintiff's reply (DE 13), the Commissioner's supplemental authority (DE 14), and the administrative record (DE 8).

### A. Background and Administrative History

Plaintiff filed her application for SSI benefits in April 10, 2015, alleging that she had been disabled since January 1, 2000. (R. at 143-44.) In her October 2015 disability report, she states that the following conditions limited her ability to work: depression; bipolar disorder; anxiety disorder; ADHD; congenital club feet; leg length discrepancy; history of special education; sleep apnea; asthma; diabetes; and gout. (R. at 159.) Her application was denied on December 23, 2015. (R. at 73-81, 84-91.)

On January 26, 2016, Plaintiff requested a hearing by an Administrative Law Judge (ALJ). (R. at 92-94.) On November 7, 2016, ALJ Donald G. D'Amato held a hearing, at which Plaintiff and a vocational expert, Cheryl Mosley, testified. (R. at 34-55.) ALJ D'Amato issued an opinion on February 21, 2017, which determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 7-22.)

That same day, Plaintiff submitted a request for review of the hearing decision/order. (R. at 142.) However, on November 1, 2017, the Appeals Council

denied Plaintiff's request for review. (R. at 1-6.) Thus, ALJ D'Amato's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on December 15, 2017.

### B.     Plaintiff's Medical History

The administrative record contains 172 pages of medical records, which were available to the ALJ at the time of his February 21, 2017 decision. (R. at 204-376 [Exhibits 1F – 7F].) These materials will be discussed in detail, as necessary, below.

### C.     The Administrative Decision

Pursuant to 20 C.F.R. § 416.920(a), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 10, 2015, the date that she filed her application for benefits. (R. at 12.) At **Step 2**, the ALJ found that Plaintiff has the following severe impairments: congenital left leg deformity; asthma; obesity; diabetes mellitus with neuropathy; history of gout, left foot; obstructive sleep apnea; gastroesophageal reflux disease; history of learning disability; leg length discrepancy; bipolar I disorder, most recent episode depressed, moderate; attention deficit disorder, hyperactive or combined; borderline personality disorder; anxiety with history of panic attacks; arthritis neck, lumbar, shoulders, and legs; and history of possible seizure/staring spell (April 2016). (*Id.*) At **Step 3**, the ALJ found that Plaintiff does not have an

impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (*Id.* at 12-14.) Prior to **Step 4** of the sequential process, the ALJ determined that Plaintiff has the residual functional capacity ("RFC")[1] to:

> perform sedentary work as defined in 20 CFR 416.967(a) except she requires work that is unskilled with one, two, or three step instructions that is non-fast rate production defined as involving no conveyor belt or assembly line work; the claimant cannot function as a member of a discrete team and contact with co-workers and supervisors is occasional and largely superficial; the claimant cannot be in direct interactive contact with the public; the claimant requires a "low stress" environment, defined as having only occasional changes in the work setting [*i.e.*, *mental health limitations*]; can lift and/or carry 5 pounds frequently and 10 pounds occasionally (from very little up to 1/3 of an 8-hour workday); can stand and/or walk (with normal breaks) for about 2 hours in an 8-hour workday, but can do so for only 15 minutes at one time; can sit (with normal breaks) for about 6 hours in and 8-hour workday, but can do so for only 15 minutes at one time; can perform pushing and pulling motions with upper extremities within the aforementioned weight restrictions for no more than two thirds of an 8-hour workday, but can only occasionally do so with the lower extremities [*i.e., exertional limitations*]; can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and fingering for no more than two thirds of an 8-hour workday [*i.e., manipulative limitations*]; needs to avoid hazards in the workplace such as moving machinery and unprotected heights; job responsibilities do not include the use of handheld vibrating tools; needs to be restricted to a "relatively clean" work environment meaning stable temperatures, stable humidity, and good ventilation that allows the claimant to avoid concentrated exposure to dusts, fumes, gases, odors, and other pulmonary irritants [*i.e., environmental*

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

> *limitations*]; can perform each of the following postural activities occasionally: climbing stairs with handrails, balancing, stooping, and crouching but she needs to avoid climbing, kneeling, or crawling [*i.e., postural limitations*]; and requires works that, in addition to any regularly scheduled breaks, allows the claimant to be off task up to 10% per 8-hour workday due to the symptoms from her impairments and/or the ancillary effects of treatment for such impairments [*i.e., non-exertional limitation*].

(*Id.* at 14-17.) At **Step 4**, the ALJ determined that Plaintiff has no past relevant work. (*Id.* at 17.) At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 18.) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since April 10, 2015, the date the application was filed. (*Id.* at 18.)

### D. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under

this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). "Substantial evidence supports a decision if 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' backs it up." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."); *Richardson*, 402 U.S. at 399 ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *see also Biestek*, 880 F.3d at 783 ("[A] decision supported by substantial evidence must stand, even if we might decide the question differently based on the same evidence.") (citing *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

    **E.  Analysis**

In her two-page argument, Plaintiff alleges that the ALJ failed to create an accurate RFC assessment because—as far as the Court can tell—he did not

specifically discuss two exhibits in his written opinion: (1) January 2017 EMG reports (Ex. 7F) and (2) Plaintiff's application to the Detroit Department of Transportation (DDOT) "to [d]etermine ADA [p]aratransit [e]ligibility," which was signed by physician's assistant (PA) Randy Stapish (Ex. 4F). (DE 10 at 6-8.) The Commissioner opposes Plaintiff's motion, asserting that substantial evidence supports the Commissioner's decision. (DE 12 at 5-13.)

### 1. Burden of proof

Plaintiff bears the burden of proof at Steps 1-4 of the sequential process, including proving her RFC. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (["D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") *(citing Young v. Sec'y of Health and Human Servs.,* 925 F.2d 146, 148 (6th Cir.1990); *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir.1980)); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant, however, retains the burden of proving her lack of residual functional capacity"). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391-92.

Plaintiff's RFC is "the most a claimant can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); s*ee also* 20 C.F.R. §§ 404.1545(a),

8

416.945(a).  The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence.  20 C.F.R. §§ 404.1527(e), 416.927(e).  However, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'"  *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (citation omitted). Pursuant to Social Security Rule 96-8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *6-7. "Although SSR 96–8p requires a 'function-by-function evaluation' to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002).  Instead, the ALJ "'need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Id.* (citations omitted).

## 2. The ALJ properly acknowledged the prior ALJ decision

The ALJ here first appropriately acknowledged that Plaintiff had a prior unfavorable final decision from an ALJ on her disability claim. (R. at 14; *see* R. at 56-67.) He then found that he is not bound by that prior decision under *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), because there is new and additional evidence supporting a change in Plaintiff's RFC. (*Id*.) In view of that additional evidence and Plaintiff's testimony about her condition, ALJ D'Amato imposed greater physical and mental limitations than the prior ALJ. (*Id.* at 14-15.)

The Commissioner provided supplemental authority to the Court on the Sixth Circuit's recent decision in *Early v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018). (DE 14.) *Early* clarified the reach of *res judicata* principles, holding that where an individual seeks disability benefits for a distinct period of time, that application is entitled to review. *Id.* at 933. The court further held that principles of *res judicata* "do not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings." *Id.* at 931. Having determined that he was not bound by any prior decision, the ALJ here gave the evidence in the record a "fresh look," thus satisfying *Early*. *See Kimball v. Comm'r of Soc. Sec.*,

10

No. 17-12659, 2018 WL 4102845, at *5 n.4 (E.D. Mich. Aug. 7, 2018) (finding *Early* did not change the Court's analysis of pre-*Early* ALJ decision because the ALJ had concluded she was not bound by the previous RFC due to new and material evidence), *report and recommendation adopted*, 2018 WL 4095081 (E.D. Mich. Aug. 28, 2018).

### 3. The ALJ's RFC determination

A review of the ALJ's decision demonstrates that he sufficiently "'articulate[d] how the evidence in the record supports the RFC determination, discuss[ed] the claimant's ability to perform sustained work-related activities, and explain[ed] the resolution of any inconsistencies in the record.'" *See Delgado*, 30 F. App'x at 547. The ALJ thoroughly reviewed and considered Plaintiff's hearing testimony, her daily activities, the objective medical evidence, and her treatment history, and found that she was capable of performing a significantly reduced range of sedentary exertional work. (R. at 14-17.) He specifically noted that "there is minimal objective evidence regarding any physical condition or pain in the file" and thus he "construed the claimant's physical impairments liberally" and imposed substantially greater physical limitations than the prior ALJ, who limited Plaintiff to sedentary work with the need for a sit/stand option and the ability to lift/carry 10 pounds frequently and occasionally. (*Id*. at 15; *see* R. at 60.)

11

Plaintiff argues that the ALJ's RFC assessment is flawed because the ALJ did not specifically discuss two January 2017 EMG reports and Plaintiff's form application to the DDOT "to [d]etermine ADA [p]aratransit [e]ligibility." (DE 10 at 7.)[2] This argument is unavailing. First, the ALJ stated that he carefully considered "all the evidence" (R. at 10, 15), and his opinion includes an adequate summation of the hearing testimony and treating records; he was not required to discuss every piece of evidence. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (citing *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)) ("While it might be helpful for an ALJ to articulate his

---

[2] Plaintiff broadly complains that the ALJ did not address "statements by [her] doctors." (DE 10 at 6.) However, Plaintiff fails to identify *which* doctors or *which* statements she is complaining about, and has otherwise failed to develop this argument. Accordingly, this argument is waived, except to the extent these "statements" are included in the documents addressed in this report and recommendation. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to ... put flesh on its bones."). Similarly, Plaintiff claims that she would be "out of her work environment at least once per week for her doctor visit," and in support simply cites the entirety of her 172 page medical record (Exhibits 1F through 7F). (DE 11 at 7, citing R. at 207-376.) It is Plaintiff's burden to prove her lack of RFC. *See Jordan*, 548 F.3d at 423. The Court will not search through a 172 page record for potential evidence beneficial to Plaintiff. *See Davis v. Comm'r of Soc. Sec.*, No. 2:15-cv-12644, 2016 WL 4445774, at *10 (E.D. Mich. July 29, 2016) (Patti, M.J.) ("Having already concluded that the treating physician's…opinions were properly discounted, the Court has no affirmative duty to go through the state agency reviewer's (or the consultative examiner's) findings with a fine-toothed comb to verify consistency with the 379-page record, particularly where Plaintiff has failed to use the adversarial process to point out any inconsistencies."), *report and recommendation adopted*, 2016 WL 4429641 (E.D. Mich. Aug. 22, 2016) (Leitman, J.).

reasons for crediting or discrediting each … opinion, it is well settled that 'an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'"); *see also Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) ("[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.") (citation omitted).  Second, Plaintiff has failed to meet her burden to show these records impose any functional work-related limitations, much less any limitations in excess of those found by the ALJ, and that the ALJ's RFC assessment therefore is flawed.

### a. EMG reports

The January 2017 EMG reports provide a diagnostic record of neuropathy "consistent with diabetes." (R. at 370-76.)  However, those diagnostic records do not establish any *functional* limitations. *See Young*, 925 F.2d at 151 ("[I]t is well established that a diagnosis alone does not indicate any functional limitations caused by an impairment."); *see also Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it.").  Further, while those records note some sensory loss to pinprick and weakness of toe flexors/extensors, they otherwise reveal 5/5 strength of Plaintiff's upper and lower extremities, "including hand intrinsics." (R. at 370, 374.)  And consistent with those reports,

13

and Plaintiff's testimony, the ALJ identified neuropathy as a severe impairment and found that "[t]he neuropathy and foot conditions warrant work without vibratory handheld tools, no more than occasional pushing or pulling with the lower extremities, and with no more than two thirds of a work day involving upper extremity pushing/pulling, handling, fingering, and reaching." (R. at 12, 16.) Plaintiff has failed to demonstrate that she was entitled to any additional functional limitations, and thus has failed to identify any error.

### b. DDOT application

The second piece of evidence Plaintiff complains about is her DDOT application "to [d]etermine ADA and [p]aratransit [e]ligibilty." (DE 10 at 7; R at 266-74.) The first part of this form was filled out by Plaintiff (R. at 266-72 (noting "[t]his completes the applicant's portion")), and only the last two pages were completed by PA Randy Stapish, who simply described Plaintiff's "physical conditions" as "obesity/unsteady gait," stated that Plaintiff "can't walk to the bus stop," and that the condition was not temporary. (R. at 273.) However, the record does not contain *any* evidence that PA Stapish treated, or even examined Plaintiff, and PA Stapish failed to attach or even refer to any record evidence in support of the statements on the form application. As a physician's assistant, PA Stapish is not deemed an "acceptable medical source" according to the regulations in effect at that time, 20 C.F.R. §§ 416.902; 416.913(a) (effective prior to March 27, 2017),

and thus, even if the last two pages of the application were deemed an "opinion"—which is a stretch—it would not be entitled to any particular weight.

In any event, the ALJ identified obesity, leg length discrepancy, a history of gout, left foot, and arthritis of Plaintiff's neck, lumbar, shoulders and legs as severe impairments (among of number of other impairments), despite the "minimal objective evidence regarding any physical condition or pain in the file," and accordingly afforded Plaintiff a very restrictive RFC at the sedentary exertional level with the option to sit/stand only 15 minutes at one time, lift and/or carry five pounds frequently and 10 pounds occasionally, and to be off task up to 10% per eight-hour workday, among a number of other postural, manipulative, environmental and other non-exertional restrictions. (R. at 14-17.) The ALJ further found that the lack of treatment for Plaintiff's physical conditions, her admitted blood sugar and medication non-compliance, and her ability to look after an adult son "indicate her physical conditions would not preclude a range of sedentary work," and that her "testimony is not fully consistent with the medical evidence in the record and therefore does not support further functional limitations above." (R. at 16-17.) Plaintiff has failed to challenge the ALJ's credibility analysis and any such argument therefore is deemed waived. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("[W]e limit our consideration to the particular points that Hollon appears to raise in her brief on

15

appeal.") Plaintiff therefore has failed to demonstrate that she is entitled to any additional exertional or non-exertional functional limitations based on the record evidence or that the ALJ's RFC assessment otherwise is not supported by substantial evidence, and her claim of error should be denied.

## F.    Conclusion

The ALJ has sufficiently "'articulate[d] how the evidence in the record supports the RFC determination, discuss[ed] the claimant's ability to perform sustained work-related activities, and explain[ed] the resolution of any inconsistencies in the record,'" *Delgado*, 30 F. App'x at 547, and I find that there is substantial evidence supporting the ALJ's RFC determination. I note that an ALJ's decision cannot be reversed merely because there exists some other evidence in the record that might support a different conclusion. *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion…. This is so because there is a 'zone of choice' within which the Commissioner can act without the fear of court interference.") (citation omitted); *see also Biestek*, 880 F.3d at 783 ("[A] decision supported by substantial evidence must stand, even if we might decide the question differently based on the same evidence."). Plaintiff has failed to demonstrate that or how the ALJ's RFC is not supported by substantial evidence and has failed to

convincingly show that a different outcome was legally or factually required on this record. Plaintiff's claim of error should be denied.

In sum, the ALJ's opinion is supported by substantial evidence and is based upon a proper application of law. After a remarkably detailed analysis, and despite Plaintiff's seemingly weak evidence for several of her claimed medical conditions, the ALJ created what may well be the most painstakingly crafted RFC the Undersigned has ever reviewed, cautiously restricting Plaintiff's work activities beyond that found by the prior ALJ. Notwithstanding these restrictions, the vocational expert found that there were jobs in the national economy which Plaintiff could perform.

Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 10), **GRANT** Defendant's motion for summary judgment (DE 12), and **AFFIRM** the Commissioner of Social Security's decision.

### III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: February 13, 2019        s/*Anthony P. Patti*
        Anthony P. Patti
        UNITED STATES MAGISTRATE JUDGE

## Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on February 13, 2019, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manger to the
Honorable Anthony P. Patti
